Todd M. Friedman (216752)
Adrian R. Bacon (280332)
Law Offices of Todd M. Friedman, P.C.
324 S. Beverly Dr. #725
Beverly Hills, CA 90212
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@attorneysforconsumers.com
abacon@attorneysforconsumers.com

*Attorneys for Plaintiffs*,
ALEXIOS KAFATOS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ALEXIOS KAFATOS, individually and on behalf of all others similarly situated**<br><br>Plaintiffs,<br><br>v.<br><br>**UBER TECHNOLOGIES, INC.,**<br><br>Defendant. | **Case No.:** 3:15-CV-03727-JST<br><br>**PLAINTIFF ALEXIOS KAFATOS' OPPOSITION TO DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION FOR STAY OF PROCEEDINGS**<br><br>**DATE:** December 24, 2015<br>**TIME**: 2:00 p.m.<br>**COURTROOM:** 9<br><br>**HON. JON S. TIGAR** |

1
2

# TABLE OF CONTENTS

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

INTRODUCTION ..........................................................................................1

FACTUAL BACKGROUND .......................................................................3

LEGAL STANDARD..................................................................................4

ARGUMENT ...............................................................................................5

    Defendant fails to Meet Its Heavy Burden of Demonstrating that Its Speculative Harm Outweighs Plaintiff's Actual and Demonstrable Harm Caused By The Requested Stay. ......................................................................................6

        Plaintiff and Putative Class Members Will Suffer Prejudice As A Result of A Stay..............................................................................................6

        The Northern District has made it clear that the TCPA cases, which are in their infancy and where parties have yet to engage in discovery, should not be stayed premised on Spokeo..............................................................10

    the United States Supreme Court case of *Spokeo v. Robins* and the DC Court of Appeal's review And Interpretation of the 2015 Report and Order is inapplicable to the case at bar.................................................................11

    The terms Defendant wishes to be clarified by the DC Court of Appeals with respect to the 2015 Report and order have already been decided, and the 2015 FCC Order is hardly groundbreaking or novel....................................13

        "Called Party" and "Call" are consistently defined throughout the U.S. .........14

        The definition of ATDS, while in flux, clearly encompasses Defendant's robo-text system, and this will not be affected by the D.C. Circuit's ruling....17

    The United States Supreme Court Case Of *Spokeo v. Robins* Is Inapplicable To The Case At Bar ....................................................................18

CONCLUSION................................................................20

1
2

# TABLE OF AUTHORITIES

3  **Cases**

4  *Alltech, Inc. v. Cenzone Tech, Inc.*,

5     2007 WL 935516 (S.D. Cal. March 21, 2007)........................................................11

6  *Baker v. G.C. Services Corp.*,

7     677 F.3d 775, (9th Cir. 1982) ........................................................21

8  *Bartlett v. Heibel*,

9     128 F.3d 497, (7th Cir. 1997) ........................................................22

10 *Checker Cab Mfg. Co. v. Checker Taxi Co.*,

11    26 F.2d 752 (N.D. Ill. 1928) ........................................................7

12 *Clinton v. Jones*,

13    520 U.S. 681, (1997) ........................................................7

14 *CMAX, Inc. v. Hall*,

15    300 F.2d 265, (9th Cir. 1962) ........................................................14, 20

16 *Davis v. Diversified Consultants, Inc.*,

17    36 F.Supp.3d 217 (D. Mass. 2014)........................................................18

18 *Dependable Highway v. Navigators, Inc.*,

19    498 F.3d 1059, (9th Cir. 2007) ........................................................11

20 *Doe v. Selection.com*,

21    2015 WL 5853700 (N.D. Cal. Oct. 8, 2015) ........................................................12

22 *Dolbeer v. Stout*,

23    139 N.Y. 486, 489, 34 N.E. 1102, (1893) ........................................................6

24 *Edwards v. First American Corp.*,

25    610 F.3d 514 (9th Cir. 2010) ........................................................21

26 *Enelow v. New York Life Ins. Co.*,

27    293 U.S. 379, (1935) ........................................................6

28

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

*Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*,
  2007 WL 1655625 (N.D. Cal. June 7, 2007) ......................................................11

*Gutierrez v. Barclays Grp.*,
  2011 WL 579238, (S.D. Cal. Feb. 9, 2011) ........................................................18

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  No. MDL 14-2522 PAM/JJK, 2015 WL 5432115, (D. Minn. Sept. 15, 2015) ...14

*Jefferson Standard Life Ins. Co. v. Keeton,*
  292 F. 53, (4th Cir. 1923) .....................................................................................7

*Kansas City Southern Ry. v. United States*,
  282 U.S. 760, (1931) .............................................................................................6

*Keele v. Wexler*,
  149 F.3d 589, (7th Cir. 1998) ..............................................................................22

*Landis v. North American Co.*
  299 U.S. 248, (1936) .........................................................................................6, 8

*Larson v. Trans Union, LLC*,
  No. 3:12-cv-05726-WHO 2015 WL 3945052 (N.D. Cal. June 26, 2015)...........12

*Leyva v. Certified Grocers of Calif., Ltd.*,
  593 F.2d 857, (9th Cir. 1979) ..............................................................................12

*Lockyer v. Migrant Corp.*,
  398 F. 3d 1098, (9th Cir. 2005) .............................................................................7

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098, (9th Cir. 2005) .......................................................................14, 20

*McKenna v. Whispertext*,
  No. 5:14-cv-00424-PSG, (N.D. Cal. 2015).........................................................19

*Mims v. Arrow Fin. Servs., LLC*,
  132 S. Ct. 740, (2012) ........................................................................................3, 9

*Network Appliance Inc. v. Sun Microsystems Inc.*,
  2008 WL 2168917 (N.D. Cal. May 23, 2008) ....................................................11

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

*Olney v. Progressive Cas. Ins. Co.*,

   993 F.Supp.2d 1220 (S.D. Cal. 2014) ................................................................18

*Osorio v. State Farm Bank, F.S.B.*,

   746 F.3d 1242 (11th Cir. 2014) ...................................................................17, 18

*Ramirez v. Trans Union, LLC*

   2015 WL 6159942 (N.D. Cal. June 22, 2015) ....................................................10

*Robins v. Spokeo, Inc.*,

   742 F.3d 409, (9th Cir. 2014) ..............................................................................5

*Rosenberg v. Slotchin*,

   181 A.D. 137, 138, 168 N.Y.S. 101, (1917) ........................................................7

*Satterfield v. Simon & Schuster, Inc.*,

   569 F.3d 946 (9th Cir. 2009) ........................................................................3, 19

*Soppet v. Enhanced Recovery Co., LLC*,

   679 F.3d 637, (7th Cir.2012) ........................................................................17, 18

*Spokeo v. Robins*,

   135 S. Ct. 1892 (2015) ................................................................................*Passim*

*Wadleigh v. Veazie*,

   28 F. Cas. 1319, 1320 (C.C.D. Me. 1838) ...........................................................7

*Woods v. Caremark PHC, L.L.C.*,

   No. 4:15-CV-00535-SRB, 2015 WL 6742124, (W.D. Mo. Nov. 2, 2015)..........21

**Statutes**

47 U.S. Code § 227(a)(1) ..............................................................................................19

47 U.S. Code § 227(b)(1)(A) ........................................................................................16

47 U.S.C. § 227 (a)(1)....................................................................................................5

47 U.S.C. § 227 (b)(1)(A) ..............................................................................................5

47 U.S.C. § 227(a)(1)....................................................................................................20

*47. U.S.C. § 227 et seq.*................................................................................................3

**Other Authorities**

S. Rep. No. 95-382 at 5 (1997) ...................................................................21

**Regulations**

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

    *Declaratory Ruling and Order, FCC 15-72, Released July 10, 2015*, MCP No.

    134 (July 24, 2015) .......................................................................*Passim*

*In re Rules and Regulations Implementing the Telephone Consumer Protection*

    *Act of 1991,* Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003)........19

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Without a solid argument addressing the relevant issues in this case, Defendant Uber Technologies, Inc. ("Defendant"), asks this Court to delay a meritorious class action, and hold up the claims of thousands of individuals, premised on its speculation that the Supreme Court may rule in a manner which affects the procedural rights of putative class members involved in the case at bar. Let us not forget, Defendant is alleged to have been mass-texting thousands upon thousands of consumers, without consent, using an intrusive and obnoxious autodialer, in violation of the Telephone Consumer Protection Act *47. U.S.C. § 227 et seq.* ("TCPA").[1][2] Defendant hopes to avoid class-wide liability for these illegal activities entirely, premised on the slimmest of hopes that the Supreme Court and the United States Court of Appeals for the District of Columbia ("D.C. Court of Appeals") rule in a manner that invalidates the class action mechanism, overturns a ruling (which is hardly novel) within the clear authority of the FCC under the *Chevron* test, and thereby allows a company to break the law without repercussions. It seems highly unlikely that the Supreme Court and the DC Court of Appeals will rule in such a manner, and it is also unclear how the case cited by Defendant would overlap in the case at bar.  In short, Defendant has not demonstrated a substantial likelihood that the ruling in *Spokeo v. Robins*, 135 S. Ct. 1892 (2015), will affect the claims at issue in the case at bar.  Defendant's dubious hopes should not suspend the claims of the thousands of consumers whose rights it violated, and whose lives, time, and privacy, it unwantedly invaded.

---

[1] The Supreme Court of the United States has previously observed such unrestricted telemarketing calls to be an "intrusive nuisance" and an "invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

[2] *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 952 (9th Cir. 2009). (Interpreting text messages to suffice as "calls" within the meaning of the TCPA).

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

THE LAW OFFICES OF TODD M. FRIEDMAN, PC

BEVERLY HILLS, CALIFORNIA

On November 11, 2015, Defendant lodged its Motion for Stay of Proceedings against Plaintiff Alexios Kafatos ("Plaintiff"), pending a decision by the United States Court of Appeals for the District of Columbia concerning petitions for review of the Declaratory Ruling and Order issued by the Federal Communications Commission ("FCC") and a decision from the United States Supreme Court in *Spokeo*. [ECF No. 25][3]. Defendant argues that the Supreme Court's decisions on issues in this case "is expected to have significant and wide-reaching impact on cases across the country, including this one" and the "seismic shift" in the law will change the trajectory of Article III standing. [ECF No. 25, at p.1 ¶ 1]. However, Defendant fails to properly identify how the legal issues in these cases bear on this action and the prejudice that Plaintiff will suffer if Defendant's motion is granted. Indeed, a close inspection of the nuances of the FCC Order that are at issue in the DC Circuit's review reveal that none of these issues overlap with the case at bar.

First, Defendant glosses over the significant and facially apparent differences inherent in the issues involved in the cases being heard by Supreme Court and their relation to the case at bar. Simply put, *Spokeo* has no bearing on this case. *Spokeo* asks whether a Plaintiff has standing if she has received no actual damages in a case brought under the Fair Credit Reporting Act, but the Ninth Circuit has already determined in a number of cases that a Plaintiff has standing to recover when no actual damages are asserted in a case brought under the TCPA. The Ninth Circuit determined in *Spokeo* that statutory damages result in an "injury in fact" that is "actual or imminent, not conjectural or hypothetical". *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir. 2014) cert. granted, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015). Given that TCPA claims involve actual harm, i.e. invasion of privacy, charges for text messages, and merely contain a statutory liquidated damages provision to specify the floor and ceiling for assessing such actual damages, it seems

---

[3] *See also* ECF No. 25, at p.2 ¶ 1.

abundantly unlikely that the Supreme Court would (or could) rule in such a manner that would impact a consumer's private right of action under this important consumer protection statute. Defendant is simply playing fast and loose with these issues, to delay and stall the inevitable.

Second, the pending review by the DC Court of Appeals regarding the definition of "ATDS," "called party," "call," and the manner in which an individual can revoke consent have already been decided by United States District Courts (including Ninth Circuit Courts) and numerous Circuit Courts, all of which have ruled in unison with one another and with the FCC.

## II.   <u>FACTUAL BACKGROUND</u>

On August 10, 2015, Plaintiff filed this proposed class action against Defendant alleging that Defendant violated the TCPA by engaging in a widespread and systemic scheme to promotional mass texts to consumers on their cellular phones, using autodialer technology, without prior express consent. ECF. No. 1. Indeed, Plaintiff received numerous solicitation text messages from Defendant, to the point where he had to block the number. *Id*. at ¶ 11. It is facially obvious that the technology used to send Plaintiff the mass solicitation text messages at issue qualifies as an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A). *Id*. at ¶¶ 9-13. The proposed class includes all person within the U.S. who received any unsolicited text messages from Defendant without their prior express consent.[4] ECF No. 1 ¶ 19.

Critically, for determination of this Motion, discovery has yet to commence, and this case is in its infancy, meaning that the "prejudice" cited by Defendant, i.e.

---

[4] Plaintiff is unsure at this early stage, what Defendant's basis for texting him might be. Plaintiff only knows that he never subscribed to any services with Uber, nor visited its website. At this stage, it would be pure speculation, and premature to determine whether this is a recycled or reassigned number case, a case where a third party improperly provided Plaintiff's number to Defendant, or where Defendant is simply employing sloppy techniques for obtaining consent to auto-text consumers.

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

the risk of duplicative or unnecessary litigation, is highly unlikely to come to pass.

## III.  **LEGAL STANDARD**

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigations." *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936).  "[T]his can best be done…[by] weigh[ing] competing interests and maintain[ing] an even balance. *Id*. citing to *Kansas City Southern Ry. v. United States*, 282 U.S. 760, 763 (1931); and, *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935).  Importantly, the Supreme Court imposed a heavy burden for a party moving for a stay of proceeding, stated that the moving party "must make a **clear case of hardship or inequity** in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255 (emphasis added).  "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."  *Id*.  Finally, the Supreme Court cautioned that due to the "likelihood or danger or abuse…there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger."  *Id*. at 256 citing to *Dolbeer v. Stout,* 139 N.Y. 486, 489, 34 N.E. 1102, 1102 (1893); *Rosenberg v. Slotchin,* 181 A.D. 137, 138, 168 N.Y.S. 101, 102 (App. Div. 1917); *Wadleigh v. Veazie,* 28 F. Cas. 1319, 1320 (C.C.D. Me. 1838); *Checker Cab Mfg. Co. v. Checker Taxi Co.,* 26 F.2d 752 (N.D. Ill. 1928); and, *Jefferson Standard Life Ins. Co. v. Keeton,* 292 F. 53, 53 (4th Cir. 1923).

Further, "this Court must [sic] weigh the competing interests affected by the granting or denying [sic] a request for a stay," in accordance with the standard set out by the Ninth Circuit in *Lockyer v. Migrant Corp*., 398 F. 3d 1098, 1110 (9th Cir. 2005):

Citing Landis, we set out the following framework:
Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Here, this Court should exercise its broad discretion and deny Defendant's Motion, since the current action is not one of the "rare circumstances" that warrant Defendant's requested remedy, and Plaintiffs' interests in effectively adjudicating the case at hand on its merits outweighs any potential competing interests of the Defendant to stay the case.

## IV.   **ARGUMENT**

As discussed herein, Defendant's Motion should be summarily denied. Defendant has failed to meet its burden of demonstrating that Plaintiffs' interests in effectively adjudicating the case at hand on its merits is outweighed by the speculative competing interests of the Defendant that would be served by a stay. Further, and of critical import to the Court's decision here, the United States Supreme Court case *Spokeo v. Robins* is inapplicable to the current action. Finally, Defendant's reliance upon a decision by the DC Court of Appeals on various clarifications of the 2015 Report and Order is not only far too speculative to warrant a stay of the proceedings, but the issues being interpreted by the DC Court of Appeals has already been adjudicated. Defendant's citations to other instances where the FCC has been overturned by the DC Court of Appeals is a red herring, as the issues present in the case at bar are not dependent upon the 2015 FCC Order.[5] For these reasons, as discussed in more detail below, Defendant's Motion should

---

[5] *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order, FCC 15-72, Released July 10, 2015*, MCP No. 134 (July 24, 2015) (hereinafter "2015 FCC Order" or "Omnibus Order")

THE LAW OFFICES OF TODD M. FRIEDMAN, PC

BEVERLY HILLS, CALIFORNIA

be summarily denied.

**A.   DEFENDANT FAILS TO MEET ITS HEAVY BURDEN OF DEMONSTRATING THAT ITS SPECULATIVE HARM OUTWEIGHS PLAINTIFF'S ACTUAL AND DEMONSTRABLE HARM CAUSED BY THE REQUESTED STAY.**

Defendant acknowledges that *Landis v. North American Co.*, 299 U.S. 248 (1936) is the lens through which this analysis is filtered without any explanation as to the effect said filter has on the analysis of this decision. ECF No. 25 at p.11 ¶ 4. However, Defendant failed to include in its Motion a discussion of any of the principles, rationale or guidance from *Landis. Landis* provided guidance to District Courts in ruling upon Motions for Stay Orders and observed that the analysis requires balancing the benefits of a stay with any hardship a stay may impose. Specifically, the Supreme Court stated:

> [A party seeking] a stay must make a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.  Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis*, 299 U.S. at 255.

The *Landis* matter definitively holds that it is the defendant's burden to "make a clear case of hardship or inequity" absent a stay of proceedings.  Defendant has failed to do so.   Rather, Defendant's Motion is replete with speculation that Defendant could potentially suffer absent a stay of proceedings.

   *i.   Plaintiff and Putative Class Members Will Suffer Prejudice As A Result of A Stay*

Defendant states, without any legitimate basis, that Plaintiff will not suffer prejudice from a stay of proceedings; however this is simply untrue and Defendant uses misguided logic to arrive at this erroneous conclusion.  Defendant is alleged to engage in widespread illegal telemarketing practices under the TCPA, whereby it solicits consumers on their telephones, using obnoxious, intrusive and invasive

automated autodialing technology, without their consent to do so.  Plaintiff received the following text message:

> Uber: Anaheim is closed tomorrow! Find us in Fountain Valley and Irvine instead for a FREE vehicle inspection and qualify for $100 after 10 trips. For info – t.uber.com/lavi

Because of the content of the message and its instructions for the consumer to visit Defendant's website, the text message is clearly a solicitation text.  Further, due to the generic language contained therein, it is plausible to assume that this text message was widespread.[6]

Autodialing consumers, using a pre-arranged text message, to solicit products and services is <u>the</u> classic example of the type of unwanted activity expressly envisioned by Congress in passing the TCPA.  *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 742-46 (2012).  The Supreme Court has noted that such unrestricted telemarketing is an "intrusive nuisance" and an "invasion of privacy."  *Id*.  Yet, Defendant fails to indicate to the Honorable Court in its Request for a Stay of proceedings, whether it has, or intends to materially alter its practices, despite being faced with a nationwide class action lawsuit.[7]  What is abundantly clear is that members of the putative class will continue to suffer the exact kind of damages at issue, during the pendency of the stay, and that Defendant will continue to profit by way of these allegedly illegal marketing practices, and gain an unfair competitive advantage over law-abiding competitors.

---

[6] A granting of Defendant's request for a stay on proceedings will permit Defendant to continue placing unwanted promotional text messages to consumers who have not provided consent, preventing Plaintiff from diligently furthering his duties as class representatives, which include swiftly seeking an injunction prohibiting such ongoing and harmful conduct.

[7] Defendant also fails to cite the case of *Ramirez v. Trans Union, LLC* 2015 WL 6159942 (N.D. Cal. June 22, 2015), which relied heavily on the fact that the defendant there had demonstrated that it had taken further steps to alter its behavior and comply with the law, as an important factor in granting the Defendant's request for a stay.  Since Defendant has made no such assurances to the Honorable Court, Plaintiff must be allowed to proceed diligently with his case.

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

What's more, Defendant fails to consider the prejudice that Plaintiff will suffer if the Stay is granted.  Plaintiff will further suffer harm from a stay, resulting from lapse of time, memory of witnesses fading, and company turnover at Defendant's place of business, with regard to material witnesses.[8]  This issue is even more critical in the context of a class action, where due to the high volume of individuals involved, many of them will become more difficult to provide notice to or be in a position to receive the benefits of the action, due to lapse of time.  To this, Defendant simply states that "by the time this motion for stay is fully briefed, the remaining time to disposition by the [DC Court of Appeals] is likely to be significantly less than a year," that "Plaintiff seeks primarily statutory damages and alleges no ongoing injury, therefore there is little urgency … " and that Plaintiff will not suffer additional hardship pending a stay because "Defendant has blocked the phone number at issue from receiving additional text messages to ensure Plaintiff does not receive future text messages from Defendant." ECF No. 25 at p. 17 ¶¶ 1-3. However, these arguments miss the point.  Class members and Plaintiff will be continuously burdened by the stress of a pending litigation until the matter can finally be decided.  When weighing this heavy burden against Defendant's tenuous speculation (described below), the choice is clear.

Indeed, it is implausible to hold that time has *no* effect on the evidentiary course of a case. The question is a matter of degree.  If the case, for example, were stayed for ten years, it would be clearly implausible for Defendant to make such an argument.  Similarly, waiting until both *Spokeo* and the 2015 Report and Order are decided will have an effect on prejudicing Plaintiff and his case, the question is only a matter of how much.  And, while the exact amount of prejudice at issue is difficult

---

[8]  Defendant's employee witnesses are likely to turn over, during the pendency of a Stay.   New employees who were not involved in the original policies and procedures at issue in this case, will be subsequently tasked with becoming the persons most knowledgeable on complex issues, of which they have no firsthand knowledge.

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

to calculate, courts have long agreed that time will have an effect on evidence at trial.[9]  The salient issue is whether the supposed prejudice by Defendant outweighs the obvious prejudice involved with extending the time of any case. And, the Defendant has not met its burden in this case.

Further, Defendant's arguments that Plaintiff will not be prejudiced because Plaintiff claims "only statutory damages and alleges no ongoing injury" and he will not suffer additional hardships because Defendant blocked the telephone number is completely baseless and entirely ignores the class of people, whom Plaintiff represents, that will continue to suffer the harms described by Plaintiff.   As previously mentioned, Defendant has not stated that it will cease its illegal activity.

Most importantly, as explained by the Ninth Circuit, stays "should not be granted unless it appears likely the other proceeding will be concluded within a reasonable time," *Dependable Highway v. Navigators, Inc.*, 498 F.3d 1059, 1066 (9th Cir. 2007) *citing Leyva v. Certified Grocers of Calif., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).  Notably, Defendant has provided no valid argument to show that the timeframe in question is reasonable as discussed above.  Defendant states that the Stay will lead to a "modest delay," yet in the same sentence affirms that the ruling is speculative by using the qualifier "likely" to state that the decision will be made in less than a year. ECF. No. 25 at p.2 ¶ 3. To assume that this issue is not time-sensitive is to improperly minimize the harm of the illegal activities and practices of Defendant.   The Court must take this into consideration, when determining whether a Stay is appropriate here.

ii.     *The Northern District has made it clear that the TCPA cases, which are in their infancy and where parties have yet to engage in discovery, should not be stayed premised on Spokeo*

---

[9] *Alltech, Inc. v. Cenzone Tech, Inc.*, 2007 WL 935516 at *2 (S.D. Cal. March 21, 2007); *Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*, 2007 WL 1655625 at *5 (N.D. Cal. June 7, 2007); *Network Appliance Inc. v. Sun Microsystems Inc.*, 2008 WL 2168917 at *5 (N.D. Cal. May 23, 2008).

It must be highlighted that this case is in its infancy, and that the only real costs Defendant will incur between now and until its motion for class certification will be filed will be those associated with discovery, much of which is necessary for the adjudication of Plaintiff's individual claims regardless of how the DC Circuit and Supreme Court rule anyways.  When weighing a minor amount of additional cost relating to the anticipated class certification discovery, against the kind of severe prejudice that will be suffered by class members and Plaintiff as a result of a stay on the proceedings, it is certainly not clear that the inequity tips against Defendant and mandates a stay.

As the Northern District observed in *Doe v. Selection.com*, 2015 WL 5853700 (N.D. Cal. Oct. 8, 2015), these harm described by Plaintiff above is amplified in a case which is early in the stages of litigation (as the case at bar).  The *Doe* court crucially distinguished holdings in other cases involving a *Spokeo* stay motion, in a manner that is directly applicable to the case at bar.  Specifically, the *Doe* court observed *Larson v. Trans Union, LLC,* No. 3:12-cv-05726-WHO 2015 WL 3945052 (N.D. Cal. June 26, 2015), wherein the Court tentatively granted class certification and where the brunt of discovery had already been completed.  In *Larson*, Judge Orrick granted defendant's stay, primarily because he was ready to rule on class certification, and understood that his ruling could be overturned, depending on how *Spokeo* was ruled by the Supreme Court.  He also cited challenges for Plaintiff in proving his own individual standing to bring the alleged claims.  However, in *Doe*, Judge Orrick later distinguished his ruling in *Larson*, holding that because the *Doe* matter was in its infancy, and because the plaintiff had no issue proving individual standing for his claims, the harms asserted by Defendant were speculative and also unsubstantiated:

> "this case is in its nascent development, whereas if I had not issued the stay in Larson, I would have ruled on class certification, summary judgment, and likely held the trial before Spokeo and Tyson Foods were decided. Because [the Defendant] has not shown that the

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

relevant competing interests favor a stay, its motion is DENIED"

…

"Given that Doe can establish his own individual standing and proceed with his own individual claims irrespective of the ultimate impact of Spokeo and Tyson Foods, the only potentially unnecessary discovery here is class discovery. That will undoubtedly place some additional burden on [the defendant], but it has not shown that the additional burden is sufficient to justify staying this case, which could otherwise be delayed by almost nine months depending on the timing of the Court's rulings. With respect to class certification briefing, no matter the content of the decisions in Spokeo and Tyson Foods, the parties are unlikely to need to do more than submit supplemental briefs addressing the decisions and their impact on the class certification question here." *Doe v Selection.com,* at *1 and *5.

The case at bar has only begun the discovery process, and in fact, no discovery has taken place and accordingly granting a stay here would be premature. Furthermore, Plaintiff individual standing and individual claims are not at issue in the case at bar.  This case is a mirror image of *Doe*, a Northern District case, and a mirrored ruling is appropriate.  Even on this basis alone, Defendant's Motion should be denied in full.

**B.    THE UNITED STATES SUPREME COURT CASE OF *SPOKEO V. ROBINS* AND THE DC COURT OF APPEAL'S REVIEW AND INTERPRETATION OF THE 2015 REPORT AND ORDER IS INAPPLICABLE TO THE CASE AT BAR**

While stays may be appropriate if resolution of issues in the other proceeding could assist in resolving the current proceeding, Defendant has not met its burden of showing how the ruling from the United States Supreme Court or the D.C. Court of Appeal could have any bearing upon, or relation to, the matter at hand.  *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110-1111 (9th Cir. 2005) *citing to CMAX, Inc. v. Hall*, 300 F.2d 265, 269 (9th Cir. 1962).

Defendant asserts that this action should be stayed since the United States Supreme Court granted a Writ of Certiorari in *Spokeo v. Robins*, Case No. 13-1339. ECF. No. 25, p.2 ¶ 1. In so arguing, Defendant ignores the inherent differences

between *Spokeo* and the case at bar.  Further, it is equally unclear whether the Supreme Court will decide the issues that Defendant wants decided, let alone decide them in its favor, which courts have taken as a sufficient reason to deny a stay. *See e.g. In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522 PAM/JJK, 2015 WL 5432115, at \*7 (D. Minn. Sept. 15, 2015).

Defendant also speciously concludes that this action should be stayed pending a decision from the DC Court of Appeals concerning the petitions for review of the 2015 Report and Order.  Defendant wishes to seek clarification on the definition on an automated telephone dialing system ("ATDS"), the definition of the terms, "called party," "call," and what it means for a consumer to revoke consent to be called using an ATDS.  However, these arguments provide a clear illustration of how loose Defendant is glossing over the notion that similar issues are involved in all of these cases and the case at bar.  In fact, how these applicable statutory terms have been affected and shaped by the 2015 FCC Order is not an issue in this case.  Defendant clearly never had Plaintiff's consent to place calls to his phone, as he never provided his phone number to Defendant.  Courts throughout the country, including throughout this circuit, have consistently held that only a person who is an operator of a telephonic device, may provide consent to be called on their own number.  Furthermore the question of the "current" or "potential" capacity of a dialing system, which is at issue in the CD Circuit case, is a question which does not relate, in any way, to text message campaigns sent by automated means.  Rather, what the DC Circuit is reviewing is whether the FCC's determination that a phone call, placed manually, and routed through a predictive dialing system, where the automated predictive dialing features have been deactivated, still qualifies as an ATDS under the TCPA.  These circumstances have nothing whatsoever to do with the robo-texting devices used to send the automated texts to Plaintiff and other similarly situated consumers.  How the DC Circuit rules on the 2015 FCC Order will have absolutely no impact on this case, whether it agrees with those in the defense

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

bar who challenge the FCC, or upholds the FCC's Order in its entirety.  It will still be unlawful under the TCPA to use a robo-dialer to automatically send robo-texts to consumers' cell phones, without prior express consent.  Defendant's citation to the D.C. Circuit's review of the 2015 FCC Order raises eyebrows.

Indeed, a closer examination of *Spokeo* and the 2015 Report and Order show that Defendant is simply grasping at straws to run the clock and make it more difficult for the Plaintiff to pursue his case before the evidence begins to stale.  For these further reasons, Defendant's Motion should be denied.

### i. THE TERMS DEFENDANT WISHES TO BE CLARIFIED BY THE DC COURT OF APPEALS WITH RESPECT TO THE 2015 REPORT AND ORDER HAVE ALREADY BEEN DECIDED, AND THE 2015 FCC ORDER IS HARDLY GROUNDBREAKING OR NOVEL

Defendant's primary basis for its Motion to Stay is premised on guidance it believes will be given, on the applicable scope of the FCC's 2015 Order, which it incorrectly argues <u>could</u> impact the merits of the case at bar.[10]

In fact, the merits of the issues of which Defendant seeks guidance, as applied to the case at bar, have already been defined by Courts, by the FCC and by Congress.  Defendant cites two issues, which are up for review by the D.C. Circuit Court of Appeals: 1) the definitions of "called party" and "call" under the TCPA, and as defined by the FCC in its 2015 Order, and 2) the scope of what type of technology constitutes an ATDS under the TCPA, insofar as whether this definition

---

[10] Defendant cites a slew of cases where the D.C. Circuit Court of Appeal has overturned portions of FCC Orders, yet none of these cases have anything to do with the TCPA.  The brunt of these decisions relate to the Telecommunications and Television industries, and have nothing to do with the TCPA.  Defendant's pages of citations are nothing more than a smoke screen.  Plaintiff will attempt to cut through the fog, by acknowledging that the FCC has ruled, in separate contexts and under separate laws (not the TCPA), that the Agency has exceeded their *Chevron* authority.  But these cases are of no moment in the case at bar, and Defendant's lack of analysis of the issues upon which its Motion are premised is telling.

encompasses technology which has dormant or deactivated "*potential* capacity" to automatically make telephone calls to numbers stored or produced using a random or sequential number generator. An analysis of the statutory framework, and current status of the law of each issue, described and analyzed in turn, reveal how thinly veiled Defendant's arguments in fact are.

    *a. "Called Party" and "Call" are consistently defined throughout the U.S.*

Congress, in drafting and passing the TCPA, made it unlawful "to make any <u>call</u> (other than a call made for emergency purposes or made <u>with the prior express consent of the called party</u>) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S. Code § 227(b)(1)(A) (emphasis added). Nowhere in the TCPA statute, does the phrase "intended recipient" appear, and yet, Defendant's basis for requesting that the Honorable Court hold up the claims of thousands of consumers, due to a pipe dream hope that the D.C. Circuit will create new law, that has been consistently rejected by Courts, by Congress, and by the FCC, defying all logic as well as the plain and unambiguous language of the TCPA statute itself. Such wild speculation cannot bar Plaintiff's claims from proceeding.

The FCC ruled, in its 2015 Order, that the term "called party" referred to the subscriber of the phone at the time the call was placed, a concept which makes perfect logical sense, given that the statute is designed to protect the privacy of consumers from obnoxious robo-calls that they never consented to receive:

> "We clarify that the fact that a consumer's wireless number is in the contact list on another person's wireless phone, standing alone, does not demonstrate consent to autodialed or prerecorded calls, including texts." 2015 FCC Order at ¶ 48.
> …
> "We find that the "called party" is the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

subscriber customary user of a telephone number included in a family or business calling plan. Both such individuals can give prior express consent to be called at that number. Thus…calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based." *Id*. at ¶ 73.

…

"We also reject CBA's Petition and some commenters' proposals that we interpret "called party" to be the "intended recipient" or "intended called party." We agree with the Seventh[11] and Eleventh[12] circuits that the TCPA nowhere indicates that caller intent is relevant to the definition of "called party." As described above, an "intended called party" standard does nothing to protect the new subscriber to a reassigned number. Second, "intended" is a subjective standard that would render enforcement difficult, if not impossible, because evidence of intent may not be objective or available (e.g., documents showing who the caller intended to call) and lies within the exclusive control of the caller. Moreover, interpreting "called party" to mean "intended party" is inconsistent with recent Commission decisions that the consent of one party cannot be binding on another; we recognize, however, that the consent of a customary user of a telephone number may bind the subscriber." *Id*. at ¶ 78

Courts throughout the nation have consistently held identically to this ruling, i.e. that a third party who is not the current operator of a phone, and who does not possess common authority over the phone, cannot provide the requisite "prior express consent" to a calling party, on behalf of a telephone subscriber (i.e. the "called party").[13]  What is clear from these cases, and their progeny, is that while it

---

[11] *Soppet v. Enhanced Recovery Co, LLC*, discussed *infra*.

[12] *Osorio v. State Farm Bank, F.S.B.*, discussed *infra*.

[13] *See Gutierrez v. Barclays Grp*., 2011 WL 579238, at *3–5 (S.D. Cal. Feb. 9, 2011) (the most cited case in the Ninth Circuit on this issue, where the court held that the "called party" was not the "intended recipient" but the actual recipient, and that only an individual with "common authority" over the "called party's" telephone could provide prior express consent); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640–41 (7th Cir.2012) (the most cited case in the nation on this issue, holding that "[t]he phrase 'intended recipient' does not appear anywhere in § 227, so what justification could there be for equating 'called party' with 'intended recipient of the call'?" and observing that "the idea that one person can revoke

THE LAW OFFICES OF TODD M. FRIEDMAN, PC

BEVERLY HILLS, CALIFORNIA

is true that the Ninth Circuit itself has yet to formally settle on a permanent definition of the term "called party," it has been defined by numerous cases throughout this jurisdiction and the nation, and nearly every court agrees with the definition of "called party" that was adopted by the FCC in its 2015 Order.  In short, Defendant has fabricated a dispute over the definition of "called party" from whole cloth, and its cries that the sky is falling on this issue will not come to pass.

Likewise, the term "call" has been decisively ruled upon by the Ninth Circuit, in a manner equally consistent with the FCC's 2015 Order, and the 2003 Order, which Defendant perplexingly appears to now be arguing should be trotted back out despite being in full force and effect for the last twelve years.  A text message is a call under the TCPA, and the law is abundantly clear on this issue.

The longstanding and most-cited case in the nation on the issue is *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).  There, the Ninth Circuit stated that "[w]hile the TCPA does not define "call," the FCC has explicitly stated that the TCPA's prohibition on ATDS "encompass both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls…" (Citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) ("2003 Report and Order").  The court went onto discuss the FCC's confirmation of the 2003 Report and Order, "The FCC … confirmed that the  "prohibition on using automatic telephone dialing systems to make calls to wireless phone numbers applies to text messages (e.g., phone-to-phone SMS), as well as voice calls."  In

another's consent is odd."); *Olney v. Progressive Cas. Ins. Co*., 993 F.Supp.2d 1220 (S.D. Cal. 2014) (a case litigated by undersigned counsel, and strangely cited by Defendant, despite supporting Plaintiff's position, which uphold and mirrors the rulings in *Soppet*  and *Gutierrez*, and cuts against Defendant's position); *Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242 (11th Cir. 2014), (holding that called party does not mean intended recipient); *Davis v. Diversified Consultants, Inc.,* 36 F.Supp.3d 217 (D.Mass. 2014) (same).

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

short, the Ninth Circuit relied on the 2003 FCC Order, which has been in effect for twelve years, in ruling that text messages were "calls" under the TCPA. The fact that the Defense Bar wants a gratuitous second bite at the apple, just because the FCC mentioned in the 2015 FCC Order that this was still the law, does not mean that the law will somehow be changed by the D.C. Circuit. Defendant must prove that there is a substantial probability the D.C. Circuit's decision will impact this case. Defendant has failed to meet this burden, and its Motion should be denied.

*b. The definition of ATDS, while in flux, clearly encompasses Defendant's robo-text system, and this will not be affected by the D.C. Circuit's ruling*

Congress, in drafting and passing the TCPA, defined the term "automatic telephone dialing system" means equipment to include any "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S. Code § 227(a)(1).[14] This basic premise of law has not changed throughout the life span of the TCPA. What has changed is a question of whether the term "capacity" relates to "present capacity" or "potential capacity," a distinction which Defendant correctly points out. However, Defendant fails entirely to describe or analyze how the question or present vs potential capacity might be triggered in the case at bar. Indeed, facially, it would appear that the distinction between potential and present capacity is not at issue here, as the texts sent to Plaintiff and other consumers were clearly sent using predictive dialing technology. This issue has long been settled in prior FCC rulings, dating back to 2003, where the FCC ruled that predictive dialers, which lack present capacity to automatically and sequentially dial stored numbers, still qualify as an ATDS under the TCPA. See 2003 FCC Order at ¶¶ 131-134.

---

[14] *See also McKenna v. Whispertext,* No. 5:14-cv-00424-PSG, *Order Granting Motion to Dismiss,* (N.D. Cal. 2015)(Reaffirming that an ATDS is defined as "equipment which has the capacity-(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. (Citing 47 U.S.C. § 227(a)(1)).

Even so, it is entirely premature to make this determination in any case, given that discovery is yet underway.  Defendant's citations to the ATDS issue before the D.C. Circuit are factually inapplicable.  A stay should not be imposed on this ground.

### i. THE UNITED STATES SUPREME COURT CASE OF *SPOKEO V. ROBINS* IS INAPPLICABLE TO THE CASE AT BAR

Finally, Defendant asserts that this action should be stayed since the United States Supreme Court granted a Writ of Certiorari in *Spokeo v. Robins*, Case No. 13-1339. ECF No. 25 p.2 ¶ 1. In so arguing, Defendant ignores the inherent differences between *Spokeo* and this matter.  Specifically, *Spokeo* solely alleges violations of the Fair Credit Reporting Act and does not involve the TCPA.  While stays may be appropriate if resolution of issues in the other proceeding could assist in resolving the current proceeding, Defendant has not explained how a ruling from the United States Supreme Court considering a drastically different statute has any bearing upon, or relation to, the matter at hand.  *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110-1111 (9th Cir. 2005) *citing to CMAX, Inc. v. Hall*, 300 F.2d 265, 269 (9th Cir. 1962).

Of note, the Ninth Circuit found in *Spokeo* that a consumer pursuing liability for violations of the Fair Credit Reporting Act that did not allege any out of pocket loss still had standing in the U.S. District Courts, since the Legislature had created the award of statutory damages and intended such damages to be an injury for purposes of standing.  In so ruling, the Ninth Circuit followed the principles from its 2010 ruling in *Edwards v. First American Corp.*, 610 F.3d 514 (9th Cir. 2010) that found standing for a class-action that sought damages for violations of the Real Estate Settlement Procedures Act, even though the allegations did not allege any out of pocket loss by the consumers.

In this vein, courts have used existing precedent as a guideline, rather than speculate as to what the Supreme Court will do. *Woods v. Caremark PHC, L.L.C.*, No. 4:15-CV-00535-SRB, 2015 WL 6742124, at *3 (W.D. Mo. Nov. 2, 2015). And,

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

numerous courts in the Ninth Circuit repeatedly held that a consumer alleging violations of the TCPA may seek strictly statutory damages without the need to prove or even allege actual damages.

In enacting these consumer protection statutes Congress intended private actions to be the main vehicle for enforcement. *See* S. Rep. No. 95-382 at 5 (1997); and, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.*, 130 S. Ct. 1605, 1624 (referring to "the FDCPA's calibrated scheme of statutory incentives to encourage self-enforcement"). [15]   As explained by the Ninth Circuit, statutory damages are available without proof of actual damages. *Baker v. G.C. Services Corp.*, 677 F.3d 775, 781 (9th Cir. 1982). *See also Rogers v. B-Real, L.L.C.*, 391 B.R. 317, 321-322 (2008) ("the FDCPA does not require proof of actual damages as a condition to the recovery of statutory damages; *Keele v. Wexler*, 149 F.3d 589, 593-594 (7th Cir. 1998) (the FDCPA "is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not."); and, *Bartlett v. Heibel*, 128 F.3d 497, 499 (7th Cir. 1997). Similarly, as described, the U.S. Supreme Court in *Mims* held that TCPA claims involve actual harm, i.e. invasion of privacy, and merely contain a statutory liquidated damages provision to specify the floor and ceiling for assessing such actual damages.  It is unclear how the decision in *Spokeo* could invalidate the Supreme Court's prior rulings about the actual harm caused to consumers through TCPA violations.  Defendant does not delve into this issue, but instead merely speculates that *Spokeo* <u>could</u> impact the case at bar.  This bald assertion is not enough to meet Defendant's heavy burden of

---

[15]  The FDCPA (a similar statute to the TCPA with regard to its prescription of statutory damages) "permits and encourages parties who have suffered no loss [i.e., no actual damages] to bring civil actions for statutory damages." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008). *See also Nelson v. Select Fin. Serv.s, Inc.*, 2006 WL 1672889 (E.D. Pa. 2006); *Phillips v. Amana Collection Serv.*, 1992 WL 227839 (W.D.N.Y 1992); *Diamond v Corcoran*, 1992 U.S. Dist. LEXIS 22793 (W.D. Mich. 1992).

persuasion.

In sum, Defendant's Motion curiously requests this Court to Stay Plaintiff's action on the outside chance that the United States Supreme Court may issue a decision unrelated to the question pending before it.  Such a request should be disregarded by this Court.  In addition, the issue of whether a consumer may recover statutory damages without asserting actual damages is clear and unambiguous. Thus, Defendant's Motion should be denied.

## V.    CONCLUSION

Based upon the foregoing discussion, Plaintiff respectfully requests this Court deny Defendant's Motion since the cases at issue examine an entirely unrelated situation and a Stay would prejudice Plaintiff.  Plaintiff's claims should be allowed to proceed on track.

Dated: November 27, 2015                 THE LAW OFFICES OF TODD M. FRIEDMAN

                                         By: Todd M. Friedman_____
                                            TODD M. FRIEDMAN, ESQ.
                                            ATTORNEY FOR PLAINTIFFS

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
BEVERLY HILLS, CALIFORNIA

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is The Law Offices of Todd M. Friedman, P.C., 324 S. Beverly Dr., Suite 725, Beverly Hills, California 90212. On November 27, 2015, I served the within document(s):

**PLAINTIFF ALEXIOS KAFATOS' OPPOSITION TO DEFENDANT UBER TECHNOLOGY, INC.'S MOTION FOR STAY OF PROCEEDINGS**

- were served on all parties or their counsel of record named below by serving a true and correct copy in the manner indicated.

James G. Snell
PERKINS COIE LLP
505 Howard St., Ste. 1000
San Francisco, Ca 94105
jsnell@perkinscoie.com

☒    ECF – I caused the above document(s) and all supporting papers to be served on all counsel named above through the ECF system.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on November 27, 2015, at Beverly Hills, California.

/s/ Todd M. Friedman
TODD M. FRIEDMAN